In this suit, plaintiff alleges that he is the owner and in possession of the SE 1/4 of Headright No. 39, Township 4 South, Range 9 East, containing 169.58 acres, situated in the Parish of Tangipahoa. He alleges that Charles W. Dewitt, Charles H. Houlton and Lake Superior Piling Company, and their agents or employees, acting together, aiding and assisting each other, went upon the said land, cut and removed, on May 1, 1943, 24 sticks of piling of the value of $120. He further alleges that these parties have announced their intention to return, cut and remove other piling and timber from the said property and will do so unless restrained and enjoined, and prays that a rule issue directed to the three said defendants to show cause why a preliminary writ of injunction should not issue, enjoining and restraining them from trespassing upon his property and cutting and removing any timber therefrom, and upon trial that the rule be made absolute and that a preliminary injunction issue accordingly upon plaintiff furnishing bond. He further prays for a judgment in the sum of $120 against all defendants, in solido. He further prays that he be recognized as the owner and possessor of the said property, entitled to the possession thereof, maintaining and perpetuating the preliminary writ of injunction heretofore issued.
A restraining order and rule to show cause was obtained and served on the defendants, and, after proceedings were had, which need not be recited here, a preliminary injunction issued.
The defendants, in their answer, deny all of plaintiff's allegations. In further answer, they aver defendant Dewitt is the owner of the timber rights on the said property, having acquired the same by purchase from Lake Superior Piling Company, *Page 434 
Inc., by deed dated January 16, 1940, recorded at COB 169, page 423, of the records of Tangipahoa Parish, and set up the chain of title of Lake Superior Piling Company, Inc., to the United States Government. They further aver that under said chain of title, Dewitt, as owner of the said timber, has the right to go upon the said property and remove the timber therefrom, the timber sales being without any time limit, no judgment of Court having been rendered setting a time limit and he not having agreed to any time limit. They further aver that plaintiff Bell has heretofore interfered with Dewitt's employees in the cutting of the said timber and that therefore, he, Dewitt, is entitled to a writ of injunction, enjoining and restraining the said Bell from interfering in any manner with his rights in the removing of the timber.
Respondent Lake Superior Piling Company, Inc., assuming the position of plaintiff in reconvention, avers that plaintiff Bell, well knowing it to be the owner of the timber cut, removed and converted to his own use timber of the value of $5,000, alleging that, though the said timber was cut, removed and converted to his own use prior to the date of the sale of said timber to Dewitt, it only discovered and received notice of the same when the employees of Dewitt entered upon the said land to remove the said timber.
The prayer of defendants' answer is that (a) plaintiff's suit be dismissed; (b) that plaintiff be enjoined, prohibited and restrained from interfering in any manner with defendant. Dewitt or his agents and employees in removing the timber; (c) and as plaintiff in reconvention, that there be judgment in favor of defendant Lake Superior Piling Company and against plaintiff Bell in the sum of Five Thousand ($5,000) Dollars, with interest from judicial demand until paid for the timber removed and converted to his own use by plaintiff prior to the date of the sale of said timber rights to Dewitt.
Thereafter, the case was tried on the merits, which trial resulted (a) in a judgment dissolving the writ of preliminary injunction and rejecting plaintiffs demand; (b) in a judgment in favor of Lake Superior Piling Co. in the full sum of $637, with 5% per annum interest from judicial demand, until paid, for the timber removed by the said plaintiff; and (c) that the defendant, Charles Dewitt, the owner of the timber on the SE 1/4 of Headright 39, Township 4, South, Range 9 East, be allowed one year from the date of final judgment herein within which to remove the said timber. Plaintiff has appealed. Defendants have answered the appeal, and pray that the judgment be amended by increasing the award by the sum of $500 as attorney's fees and damages resulting from the injunction sued out by the plaintiff and thereafter dissolved, and that all costs be taxed against the plaintiff, and that as thus amended the judgment be affirmed.
It appears that on November 21, 1887, Richard Brown acquired the SE 1/4 of HR 39, T — 4 — S, R — 9 — E. On January 20, 1902, Richard Brown sold to Hosea Chappel 40 acres of said land described as the N 1/2 of N 1/2 of SE 1/4 of HR 39. On June 20, 1902, Richard Brown sold to Wm. T. Jay "All of the standing Timber on the Southeast Quarter of Section or Headright No. Thirty-nine T 4 S R 9 E. Said Headright being that of Elisha Hornsby containing One Hundred and Sixty Acres more or less. The sale of timber on the land situated in the Elisha Hornsby Headright is subject to this reservation. The timber on Forty Acres of land taken from the Northern Side of said Southeast Quarter of the Headright is not sold. The land on which said timber is situated having been previously sold to Hosea Chappels." On February 23, 1903, Hosea Chappel sold to Wm. T. Jay, "all the timber of every sort and description situated on the following described property, to-wit: N 1/2 of the N 1/2 of SE 1/4 of Headright 39, T 4 s, R 9 E." Thus, after February 23, 1903, there were two separate and distinct estates in the land forming Headright 39, etc., one being in the soil itself and the other in the timber growing thereon.
On January 25, 1906, W.T. Jay sold to Houlton Brothers the timber on the land as described in his deeds of acquisition.
It is taken for granted, as proven by the parties, that Houlton Brothers sold the timber to Lake Superior Piling Company, Inc., *Page 435 
on May 1, 1907, and that it, in turn, on January 16, 1940, sold the timber rights to defendant Dewitt. Defendants admitted that the plaintiff is the owner of the land in question, having acquired it from the vendees of Richard Brown. Therefore both the plaintiff and defendant Dewitt trace their title to a common author in title, Richard Brown.
Originally instituted for the purpose of obtaining a permanent writ of injunction against the defendants to enjoin them from cutting and removing standing timber on a certain tract of land in Tangipahoa Parish, and to be recognized as the owner and possessor of the same, in other words, as an action of trespass, the suit was converted and treated by the parties as a petitory action, the subject matter thereof being the ownership of the standing timber on the property.
It appears from the reasons assigned by the trial judge and from a copy of the brief of plaintiff-appellant, that the plaintiff contended before the trial court that "The only question to be determined in this case as we see it, is that of whether the Lake Superior Piling Company or Houlton Brothers cut and removed the timber which was merchantable at the time of their purchase of the same from W.T. May, * * * At the conclusion of its cutting of the timber, all of its rights thereto terminated. In the case at bar, after the timber had been cut and removed by the Houltons, all of their rights terminated and any further attempt by them to cut the timber placed them in a category of mere trespassers, which they were," basing their contention on the theory that the evidence introduced showed that the Houltons or the Lake Superior Piling Company, in 1913, cut and removed all of the merchantable timber from the land which could be cut and removed and that such timber which were in the branch bottom were not cut and removed because the logging operations were too expensive and there was no market therefor, thus abandoning such timber remaining on the land.
It is shown by the evidence that the largest portion of the land lies along Tchefuncta River and is swamp land upon which the timber in dispute is standing.
After making a narrative summary of the testimony of each witness who testified on the trial of the rule and on the merits, after personally visiting and inspecting the premises with the attorney for plaintiff and the attorneys for defendant and the plaintiff and defendant Houlton and others, and after commenting, in his reasons for judgment, on the testimony of the witnesses for plaintiff and defendants, the trial judge came to the conclusion that none of the timber was ever cut by Houlton Brothers on the land involved and that in effect the timber cut on the high land composed of longleaf pine was cut to the line by someone else cutting the timber on adjoining property and was cut by the parties who cleared up the land under fence and cultivated it. Because of the fact that plaintiff's witnesses were very much in error in testifying that all the timber in the swamp and highland had been cut clean, the trial court was convinced that the testimony of the defendants' witnesses to the effect that Houlton Brothers never cut any of the timbers except a few sticks of piling which were removed in about May, 1943 was correct.
[1] When this case was set for argument and submission the plaintiff and defendants appeared and orally argued the case. However, plaintiff has failed to file a brief, showing wherein the trial judge committed any error in his finding of fact. After a careful review of the entire record, we do not find wherein any reversible error has been committed by the trial judge. He has appraised these facts against the plaintiff and we must say that we fully agree with him.
On the quantum awarded Lake Superior Piling Co., the trial judge based his award on the testimony of Will Vernado, stating that Vernado had found the amount of timber cut to be 182,000 feet. In answer to a direct question on the amount of timber which he, Vernado, found had been cut on the SE 1/4 of Headright 39, west of the Tchefuncta River, he stated: "79,500 feet of hardwood — gum and magnolia — 45,700 feet of pine. That was cut — checked up. Stumps and tops." This makes a total of 125,200 feet. He testified about some cutting on other portions of the Headright. *Page 436 
However, we are only concerned with the SE 1/4 of the Headright. Further on, in his testimony, on cross-examination, he testified as follows:
"Q. How many thousand feet of timber would you say is on the SE 1/4 of HR 39? A. 79,500 feet of hardwood, 45,700 feet of pine.
"Q. On the SE 1/4 or the entire HR? A. On the SE 1/4.
"Q. The balance was on the other part of the headright? A. Yes."
These questions and answers were not as to the amount of timber cut, but were an estimate of the whole timber on the SE 1/4 of the headright. This totals the same amount as given on his prior examination. We find testimony in the record that "the hardwood is practically in its original state with the exception of some gums and beech and a few other trees cut byvarious people, but as far as the hardwood is concerned, it is practically in the same state it was in." In other words, we take this admission to mean that the cutting of gum, beech and a few other trees was negligible to compare with the present timber standing. It is at least confusing.
Furthermore, it is admitted that "various people" did some cutting on the SE 1/4. None of the witnesses for defendants attempted to say that plaintiff had cut, or caused to be cut, all of the timber which had been cut. We find from plaintiff's testimony that he had cut and removed 18,000 to 20,000 feet of timber, to be as accurate as Vernado. He is definite that he cut or had cut this amount. He testified that he had all the slips at his house, and it also appears that he could have produced duplicate sale slips from the Independence Box Factory, the purchaser of the timber which he cut, all of which confuses the issue.
[2] Under these facts as disclosed by the record, we find that plaintiff's estimate of 18,000 to 20,000 feet of timber of the value of $75.00 to be too low and the estimate of Vernado of 125,200 feet of timber of the value of $438.20 to be too high. It is our opinion that an equitable solution of the value is to strike an average between the two estimates, thus reducing the award to $256.60.
[3] With reference to defendants' answer before us, we don't feel that we can consider it for the reason that the relief prayed for in said answer was not prayed for in their answer in the Court below, and was not made an issue in this case.
For these reasons assigned, the judgment appealed from is amended by reducing the amount awarded the Lake Superior Piling Company to the sum of $256.60, and as thus amended, the judgment is affirmed. Defendant Lake Superior Piling Company to pay the costs of this appeal, all other costs to be paid by plaintiff.